UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| TONYA R. JOCKISH,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration;<br><br>　　　　　Defendant. | 5:15-CV-05011-KES<br><br>MEMORANDUM OPINION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER |

Plaintiff, Tonya Jockish,[1] seeks review of the decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382. The Commissioner opposes the motion and urges the court to affirm the denial of benefits. For the following reasons, the court reverses the decision of the Commissioner.

## PROCEDURAL HISTORY

Jockish filed an application for SSI on March 7, 2012. AR 145-50. The Commissioner denied her claim initially on August 16, 2012, and upon reconsideration on December 7, 2012. Jockish received a hearing before Administrative Law Judge (ALJ) James W. Olson on September 17, 2013. On October 28, 2013, the ALJ issued an opinion affirming the denial of benefits.

---

[1] The court notes that the administrative record is replete with inconsistencies regarding the appropriate spelling of the plaintiff's last name. Because the ALJ and the parties have utilized "Jockish," the court will do so as well.

AR 21-30. The Appeals Council denied Jockish's request for review, therefore Jockish's appeal of the Commissioner's final decision is properly before the court pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Jockish was born in 1972 in Sturgis, South Dakota. AR 147. Jockish graduated from high school in 1990, and she completed a course in phlebotomy in 2002. AR 187. She has a sporadic work history. From 1994 to 1999, she was employed as an assistant manager at a restaurant. AR 230. After completing her training in phlebotomy, Jockish worked as a phlebotomist for roughly a year. *Id.* Jockish then returned to school in hopes of becoming a licensed practical nurse, AR 231, but quit the program half way through the second semester. *Id.* Jockish claims that she has been unable to work since 2003.

Jockish's medical history features numerous consultations with physicians and a rigorous drug regimen. Disability reports in the record identify the following prescriptions in her historical drug regimen: amantadine, amitriptyline, bupropion, moloxicam, ultram, neurontin, and propranolol. AR 189; AR 215; AR 223. Physicians prescribed these medications to counteract the following impairments: chronic fatigue, migraines, depression, osteoarthritis, pain and numbness in her back and extremities, and high blood pressure and heart rate. Jockish alleged in her application for SSI that she suffers from the following impairments: fibromyalgia, arthritis, leg weakness

and numbness, migraines, depression, chronic fatigue, weakness in arms, medicine that makes her tired, legs that give out, and chronic pain.    AR 186.

## EXPERT TESTIMONY IN THE RECORD

Thomas Atkin, Psy.D., submitted a Psychiatric Review Technique to aid in the review of Jockish's SSI application. AR 367-79. Atkin categorized Jockish's mental impairments as "not severe." AR 367. Additionally, Atkin determined that Jockish's mental impairments had no impact on her daily activities, social functioning, or concentration. AR 377. Atkin stated the following in his closing remarks:

> Claimant has multiple physical issues. Depression is mentioned in MER (1F4) June of 2011. Claimant was concerned about her future given her medical problems. As of October 2012 (5F2) treatment notes indicate no depression. There are ongoing limitations due to depression noted in MER. Impairment opined to be "Not Severe".

AR 379.

When Jockish's SSI claim was under reconsideration by the Social Security Administration, Jerry Buchkoski, Ph.D., and Tom Burkhart, M.D., entered findings regarding Jockish's impairments. AR 72-81. In the Psychiatric Review Technique included in the report, Buchkoski opined that Jockish suffered only mild limitations in daily living, social functioning, and maintaining concentration. AR 76. Buchkoski noted that Jockish's medical records were devoid of psychiatric hospitalizations or outpatient psychiatric treatment. *Id.* Dr. Burkhart noted that Jockish complained of symptoms of

depression but that "allegations [were] somewhat out of keeping with objective [medical evidence.]" AR 79.

Dr. Burkhart also offered an opinion regarding Jockish's residual function capacity (RFC). Dr. Burkhart described Jockish as a "40 [year] old female, weight near 200 [lbs.], has findings of fibromyalgia with diffuse pain, tender points, chronic fatigue and weakness . . . claims some imbalance." AR 78. In light of these characteristics, Dr. Burkhart opined that Jockish could regularly lift ten pounds and could stand or walk for a total of three hours in an eight hour day. *Id.*

After the ALJ rendered his decision, Teresa Hastings, Ph.D., performed a neuropsychological evaluation of Jockish. AR 410-13. Hastings administered various cognitive and social tests on Jockish in addition to reviewing Jockish's health generally. *Id.* As to the cognitive testing, Hastings found that Jockish typically scored in the average range, but exhibited impairment in memory, verbal learning, and executive functioning. AR 411. After completing the testing, Hastings described Jockish as follows:

> Psychological testing shows a profile of an individual who is a typical medical patient with chronic pain. Individuals with this pattern are usually dependent yet can be hardworking and driven. Repression and denial of emotional problems is characteristic and they lack insight and resist implications that symptoms are related to emotional causes or conflicts . . . the patient definitely has some severe attentional and memory problems, both visually and verbally that are in the severe range. . . . Additionally, she should see a psychiatrist because her depression and anxiety are such that they could be somewhat interfering with memory and attention.

AR 412.

## 2013 ADMINISTRATIVE HEARING

The ALJ considered testimony from two witnesses at the administrative hearing: Jockish, and Jerry Gravatt, a vocational expert. Jockish was not represented by an attorney at the hearing.

The ALJ questioned Jockish about her work history, her symptoms, and asked her to describe a typical day in her life. Jockish portrayed a somber lifestyle. Her testimony indicated that she is able to do very little on her own due to fatigue, headaches, and the pain and numbness she feels in her extremities. Jockish attributed the majority of her problems to fibromyalgia.

Gravatt testified about Jockish's potential employment options. Contemplating someone with Jockish's education, work experience, and impairments, Gravatt offered testimony that there are multiple jobs available in the national economy. Specifically, Gravatt stated that someone with Jockish's impairments could be employed as a surveillance systems monitor, an order clerk, and a document preparer.

## 2014 ALJ DECISION

Employing the five-step analysis associated with an application for social security benefits, the ALJ denied Jockish's claim on October 28, 2013. In Step One, the ALJ found that Jockish had not engaged in substantial gainful activity since March 7, 2012, the application date. In Step Two, the ALJ held that Jockish suffers from the following severe impairments: fibromyalgia, obesity, hypertension, migraines, and generalized weakness, numbness, and pain in both legs. In Step Three, the ALJ held that Jockish does not have any

impairment, or combination of impairments, that meets or equals the severity required for a finding of disability under 20 C.F.R. § 416.920(d). In Step Four, the ALJ held that Jockish has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b).[2] Additionally, the ALJ found that Jockish's RFC prevents her from performing her past relevant work. In Step Five, the ALJ held that there are multiple jobs in the national economy that Jockish can perform. Accordingly, the ALJ held that Jockish is not disabled under the Social Security Act.

## STANDARD OF REVIEW

The court must uphold the ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006)). The court considers evidence that both supports and detracts from the ALJ's decision. *Moore v.*

---

[2] The ALJ held that Jockish has the following RFC: "the claimant can occasionally lift and/or carry 20 pounds, frequently lift and/or carry less than 10 pounds, stand or walk for 3 hours in an 8 hour day, and sit for more than 6 hours in an 8 hour day. Furthermore, the claimant can frequently kneel and crawl, occasionally climb ramps or stairs, balance, stoop, and crouch, but never climb ladders, ropes, or scaffolds. Moreover, the claimant must avoid concentrated exposure to extreme cold and hazards such as moving machinery and unprotected heights. AR 26-27.

*Astrue*, 623 F.3d 599, 605 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, the court may not reverse it merely because substantial evidence also exists in the record that would support a contrary position or because the court would have determined the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commissioner's construction of the Social Security Act. *Id.* (citing *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008)).

**THE FIVE STEP PROCEDURE FOR DISABILITY DETERMINATIONS**

An individual shall be considered disabled "if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists

in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(B). An ALJ must apply a five-step procedure when determining if an applicant is disabled. *Smith v. Shalala*, 987 F.2d. 1371, 1373 (8th Cir. 1993). The steps are as follows:

**Step One**: Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i).

**Step Two**: Determine whether the applicant has an impairment or a combination of impairments that are severe. 20 C.F.R. § 416.920(a)(4)(ii).

**Step Three**: Determine whether any of the severe impairments identified in Step Two match the listing in Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii).

**Step Four**: Considering the applicant's RFC, determine whether the applicant can perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv).

**Step Five**: Determine whether any substantial gainful activity exists in the national economy that the applicant can perform.
20 C.F.R. § 416.920(a)(4)(v).

## DISCUSSION

Jockish urges the court to reverse the ALJ's decision for the following reasons: (1) the ALJ erred in step two by failing to properly consider Jockish's mental impairments and chronic fatigue syndrome; (2) the ALJ failed to determine whether Jockish's impairments were the medical equivalent of a disability listing; (3) the ALJ erred in the RFC analysis pertaining to Jockish's credibility; and (4) the ALJ erred in the RFC analysis by failing to consider the opinion of an examining physician. Additionally, Jockish requests that the court direct the Social Security Administration to award her benefits.

I.   **Step Two.**

In step two, the Commissioner must determine whether the claimant has a severe impairment, that is, "one that significantly limits the claimant's physical or mental ability to perform basic work activities." *Baker v. Apfel*, 159 F.3d 1140, 1143 (8th Cir. 1998); *see also* 20 C.F.R. § 416.920(c). An impairment is not severe "if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "It is the claimant's burden to establish that [her] impairment or combination of impairments are severe." *Id.*

   A.   **Mental Impairment.**

The ALJ found that Jockish does not suffer from severe mental impairments. Specifically, the ALJ found that the "claimant's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." AR 23. In making this finding, the ALJ applied the Paragraph B criteria for evaluating mental disorders under section 12.00C of 20 C.F.R. Part 404, Subpart P, Appendix 1, and relied upon reports from Atkin and Buchkoski. *Id.*

Jockish takes issue with the ALJ's reliance upon the report prepared by Atkin. Docket 15 at 39. Jockish asserts that Atkin failed to consider Jockish's written statements in the record as well as testimony from Mary Hedges,

9

Jockish's roommate. Additionally, Jockish argues that Atkin's "interpretation of medical evidence showed a lack of psychological insight or professionalism." Docket 15 at 39. While framed as an argument that Atkin failed to review necessary evidence in the record, Jockish is merely asserting that medical evidence is contrary to Atkin's opinion. Jockish supports this argument by citing portions of the record that detail her symptoms and treatment of her mental impairments.

   The Commissioner offers three arguments in response to Jockish's position. First, the Commissioner argues that the ALJ did not solely rely upon Atkin's position. The ALJ also relied upon the opinion of Buchkoski, who also opined that Jockish's mental impairments only created mild limitations on daily living, social functioning, and concentration. Docket 16 at 6 (citing AR 76). Second, the Commissioner argues that a diagnosis of depression and anxiety does not automatically establish a finding of severe impairment. Docket 16 at 7 (citing *Phillips v. Colvin.* 721 F.3d 623, 631-33 (8th Cir. 2013) (stating that a condition cannot be considered severe if medications control the symptoms associated with the impairment)). Finally, the Commissioner argues that a finding of severe mental impairment is inappropriate here because Jockish has not sought mental health counseling or psychiatric treatment. Docket 16 at 9 (citing *Anderson v. Astrue,* No.10-3433-SSA-CV-S-MJW, 2012 WL 511488, at *2 (W.D. Mo. Feb. 15, 2012) (stating that the absence of psychiatric or mental health counseling disfavors a finding of severe mental impairment)).

The court finds that substantial evidence supports the ALJ's determination that Jockish does not suffer from a severe mental impairment. While there are portions of the record that detail the diagnoses and prescriptive care associated with Jockish's depression and anxiety, such diagnoses and prescriptive care do not mandate a finding of severe impairment. Medical evidence must also establish that the impairment is sufficiently severe. *See* SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). The ALJ considered the opinions of two experts in mental health and properly reviewed whether Jockish's impairments are severe under the Paragraph B criteria. Jockish cites no legal or factual error that warrants reversal.

The court also finds that the 2013 neuropsychological examination, completed after the ALJ's decision, does little to discredit the ALJ's analysis. The examination revealed that Jockish suffers from some memory related issues and that Jockish's "depression and anxiety are such that they could be somewhat interfering with memory and attention." AR 412. But Hastings' overall review of Jockish's mental status supports the ALJ's determination: "She appears to be intelligent and with good insight. Attention and concentration were good. She was able to form logical sentences and the content of thought was average and oriented." AR 411. Without any psychiatric counseling or mental health treatment to support Jockish's argument that her mental impairments are severe, there is insufficient evidence in the record for the court to overturn the ALJ's determination that Jockish only suffers from

mild mental impairments. Thus, the ALJ's step-two analysis pertaining to mental impairments does not provide a basis for overturning the decision.

### B.     Chronic fatigue syndrome.

Jockish argues that the ALJ failed to consider her chronic fatigue syndrome (CFS) in step two. Jockish also argues that the absence of such analysis constitutes grounds for reversal. Docket 15 at 41 (citing *Colhoff v. Colvin*, No. CIV. 13-5002-JLV, 2014 WL 1123518 (D.S.D. Mar. 20, 2014)). In *Colhoff*, the court held that the ALJ's failure to consider impairments alleged by the claimant in step two of the analysis constitutes grounds for reversal. *Id.* at *5.

In response, the Commissioner argues that the ALJ effectively considered the CFS diagnosis through the determination that Jockish suffers from fibromyalgia. Because the symptoms of CFS are sufficiently similar to fibromyalgia, the Commissioner contends that the ALJ's analysis pertaining to fibromyalgia also contemplates CFS. Additionally, the Commissioner argues that the ALJ's failure to discuss CFS does not constitute grounds for reversal because Jockish has not shown any harm. Docket 16 at 10 (citing *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (stating that the claimant must provide some indication that the ALJ would have made a different decision but for the error)).

The court finds that the ALJ erred by failing to specifically consider CFS in step two. Not only did Jockish assert that she suffered from chronic fatigue syndrome in her SSI application, but the record also demonstrates that her

physicians consistently diagnosed and treated the illness. Additionally, as demonstrated in Section II of this opinion, *infra*, the Commissioner's argument relating to harmless error is unpersuasive. The Social Security Administration has issued separate policy rulings for fibromyalgia and CFS that detail the processes in which the agency reviews the severity of the respective impairments. Because the Social Security Administration reviews the impairments distinctly, the ALJ should have provided separate analysis regarding the severity of the two impairments. The ALJ's failure to do so demands reversal.

**II.    Step 3.**

In step three, the ALJ must consider whether the claimant's severe impairment or impairments are such that a finding of disability is appropriate. *See* 20 C.F.R. § 416.920(a)(4)(iii). If the severe impairments, when reviewed individually or in combination, satisfy the requirements of a listing in Appendix 1 of Subpart P in 20 C.F.R. Part 404 (Appendix 1), then "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

The ALJ found that Jockish does not suffer from an impairment or combination of impairments that equals the severity of a listing in Appendix 1. "Particular attention was given to listing 1.02 for major dysfunction of a joint." AR 25. The ALJ later noted that there are no specific listings for hypertension, fibromyalgia, migraine headaches, or obesity. *Id.*

Jockish argues that the ALJ failed to review her impairments as required by SSR 12-2p, which pertains to fibromyalgia. SSR 12-2p provides the following:

> At step 3, we consider whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1). [Fibromyalgia] cannot meet a listing in appendix 1 because [it] is not a listed impairment. At step 3, therefore, we determine whether the [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

SSR 12-2p, 2012 WL 3104869 at *5 (July 25, 2012). Despite acknowledging that fibromyalgia is not a listed impairment in Appendix 1, the ALJ failed to consider or employ the mandates of SSR 12-2p.

Jockish also alleges that SSR 14-1p is relevant for this court's review of her appeal. It provides the following:

> CFS is not a listed impairment; therefore, we cannot find that a person with CFS alone has an impairment that meets the requirements of a listed impairment. However, we will compare the specific findings in each case to any pertinent listing (for example, listing 14.06B in the listing for repeated manifestation of undifferentiated or mixed connective tissue disease) to determine whether medical equivalence may exist. Further, in cases in which a person with CFS has psychological manifestations related to CFS, we must consider whether the person's impairment meets or equals the severity of any impairment in the mental disorders listings.

SSR 14-1p, 2014 WL 1371245 at *8 (April 3, 2014). Even though SSR 14-1p is relevant to Jockish's impairments, the ALJ committed no error pertaining to CFS in step three because the ruling was issued after the ALJ's 2013 decision. Nonetheless, Jockish argues that the court should consider the ruling because

14

policy rulings have retroactive application when the ruling is issued while cases are under district court review. Docket 15 at 44 (citing *Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993) (stating that a ruling that clarifies existing policy has retroactive application), *rev'd on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)). Because the Social Security Administration stated that the purpose of the SSR is to "clarif[y] our policy on how we develop evidence to establish that a person has a medical determinable impairment (MDI) of CFS and how we evaluate this impairment[,]" the court finds that the policy ruling has retroactive application.

Jockish also argues that the issuance of SSR 14-1p during the pendency of this action mandates remanding the case for further review. Jockish cites *Schuster v. Colvin*, No. 13-CV-0718-WJM, 2014 WL 803461 (D. Colo. Feb. 28, 2014), to support her request for remand. Docket 15 at 45. In *Schuster*, the district court stated:

> Policy interpretation rulings, such as SSR 12-2p, may also provide cause for remand where 'the ALJ did not have the benefit of the Ruling when he arrived at his decision' and the court cannot determine whether the evidence in the record 'could have led to a different result had the ALJ assessed it with reference to the new Ruling.'

*Id.* at *3 (quoting *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting *Sloan v. Astrue*, 499 F.3d 883, 889-90 (8th Cir. 2007) (stating that remand was appropriate because the ALJ should determine whether a policy clarification affects the prior decision))).

The Commissioner concedes that SSRs 12-2p and 14-1p apply in this analysis. The Commissioner disputes, however, that Jockish has met her burden of proving that her impairments satisfy the analysis identified in the rulings. The Commissioner states that in order for Jockish to establish she suffers from a severe impairment that is the medical equivalent of an ailment listed in Appendix 1, she has the burden of proving that her symptoms satisfy certain elements of the listing. *See* 20 C.F.R. § 416.926 (establishing a set of parameters for determining whether a claimant's impairments can constitute the medical equivalent of a listing in Appendix 1 despite not suffering from the specific impairment identified in the listing). The Commissioner argues that Jockish failed to cite any portion of the record that establishes that her ailments constitute the medical equivalent of the listings identified in SSRs 12-2p and 14-1p.

While the Commissioner asserts correctly that Jockish bears the burden of proving that her severe impairments are the medical equivalent of a listing in Appendix 1, the ALJ also carries the responsibility of reviewing Jockish's severe impairments for medical equivalence under the appropriate listing. The ALJ stated that "there is no specific listings [sic] for the claimant's fibromyalgia, however the undersigned has generally considered this impairment under the musculoskeletal listings of 1.00." AR 25. The court finds that the ALJ erred in this analysis because he failed to consider listing 14.09D as SSR 12-2p references. Additionally, despite the ALJ's assertion that he considered generally the application of Jockish's fibromyalgia to the listings of §1 of

Appendix 1, the ALJ's conclusory analysis makes it "practically impossible for a reviewing court to analyze" whether the ALJ's reasoning regarding medical equivalence is sound. *See Miller v. Colvin*, 114 F. Supp. 3d. 741, 775 (D.S.D. 2015). Because the ALJ failed to consider the appropriate listing in Appendix 1, and due to the conclusory nature of the ALJ's analysis pertaining to medical equivalence, it is necessary to remand the case for further review.

The court also finds that the application of SSR 14-1p could have led to a different result in the ALJ's analysis as a whole. The record provides substantial evidence relating to Jockish's symptoms of CFS. If SSR 14-1p was issued before the ALJ's decision, it is unlikely that the ALJ would have disregarded the impairment in both steps 2 and 3. Thus, the court also finds that it is necessary to remand the case so the ALJ can review whether Jockish's CFS symptoms amount to a severe impairment and whether her impairments constitute the medical equivalent of listings in Appendix 1.

Because the court remands the case for further review, it declines to address the remaining issues associated with step four. The record now contains medical and psychiatric records that were submitted to the Social Security Administration after to the ALJ's decision. In light of the new medical evidence and this court's instructions relating to steps two and three, it is inappropriate to render judgment on the ALJ's analysis pertaining to Jockish's RFC. The court instructs the ALJ to review the medical evidence in its entirety and to make new findings throughout the disability analysis. In making this

decision, the court denies Jockish's request that the court award benefits without remanding the case for further review.

## CONCLUSION and ORDER

The court finds that the ALJ erred in failing to review whether Jockish's diagnosis relating to chronic fatigue constitutes a severe impairment. The court also finds that the ALJ failed to properly apply SSR 12-2p to determine whether Jockish's fibromyalgia constitutes the medical equivalent of a listing in Appendix 1, Subpart P of 20 C.F.R. Part 404. Additionally, due to the policy ruling issued by the Social Security Administration after the ALJ's decision, SSR 14-1p, it is appropriate to remand the case for further review. Thus,

IT IS ORDERED that the decision of the Commissioner is REVERSED and REMANDED for further review.

Dated March 25, 2016.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE